UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT SEDORE,
Plaintiff,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS,
Defendant.
______________________________/

Case No. 4:25-cv-12048

F. Kay Behm
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS (ECF No. 11)**

On July 8, 2025, Plaintiff Scott Sedore filed a pro se disability discrimination complaint against the Michigan Department of Corrections ("MDOC") alleging violations of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") during his incarceration at G. Robert Cotton Correctional Facility. (ECF No. 1). On October 6, 2025, Defendant MDOC filed its *Motion to Dismiss* (ECF No. 15) arguing that Plaintiff's Complaint fails to state a claim and that he lacks standing. This case was referred to the undersigned for all pretrial proceedings. (ECF No. 11).

## I. FACTUAL BACKGROUND

Plaintiff's claims arise from alleged discrimination that took place at G. Robert Cotton Correctional Facility in Jackson, Michigan, from May 2024 to October 2024. (ECF No. 1, PageID.16). Plaintiff claims that Defendant MDOC's customs and policies relating to the facilitation of meal periods violated Title II of the ADA and Section 504 of the Rehabilitation Act. (*Id.* at PageID.4).

Plaintiff uses a wheelchair and requires accessible seating in the prison cafeteria to eat meals. (*Id.* at PageID.9–10). According to Plaintiff, the cafeteria which Plaintiff describes as the "chow hall," contained designated wheelchair-accessible tables for inmates who use wheelchairs and rollators. The seats were limited with only 20 to 24 accessible spots available. (*Id.* at PageID.10, 16). This was not enough accessible seats for the population of disabled inmates. (*Id.*). Plaintiff alleges that around fifteen inmates regularly depended on those accessible tables, but the accessible seats were not strictly reserved for wheelchair using inmates; non-wheelchair users often occupied seating at the accessible tables, reducing the number of accessible spaces available to disabled inmates. (*Id.* at PageID.16). Plaintiff further alleges that MDOC staff routinely called multiple housing units for meals simultaneously, worsening the issues with overcrowding and competition for seating. (*Id.* at PageID.12, 16).

Plaintiff alleges that one of the accessible tables broke in May 2024. (*Id.* at PageID.16). It was later removed but not replaced until October 2024, reducing

the number of available accessible seating positions by about eight seats for roughly five months. (*Id.*). Plaintiff alleges that while the table could have been replaced promptly as MDOC had many replacement tables readily available, MDOC consciously chose not to replace the broken table. (*Id.*).

During the five months the table was missing, Plaintiff would arrive at the cafeteria and have nowhere to eat as the accessible seating had been taken. (*Id.* at PageID.14–15). Complicating matters further, MDOC had a policy only permitting inmates to eat while sitting at one of the cafeteria tables. The lack of accessible seating options left plaintiff with an impossible choice: he was either forced to risk a misconduct ticket by eating away from a table, balancing his food in his lap, or to leave without eating altogether. (*Id.* at PageID.14–15, 18–20). Eating from his wheelchair caused pain in his back, hips, shoulders, and arms, and without a table Plaintiff would spill food on himself leading to embarrassment and humiliation from his repeatedly food-stained clothing. (*Id.* at PageID.15, 19–20). Plaintiff further alleges that correctional staff threatened him with misconduct tickets and placement in segregation if he failed to sit at a table. (*Id.* at PageID.18–19). According to Plaintiff, these ultimatums forced him to miss many meals while the accessible table remained broken. (*Id.* at PageID.18–20).

Plaintiff states that he repeatedly notified prison officials of the lack of accessible seating through the prison grievance process and informed prison

officials that the lack of accessible seating caused unnecessary conflict with staff and other inmates and exacerbated Plaintiff's chronic pain. (*Id.* at PageID.17). Plaintiff reports that the officials did not take him seriously and that each grievance was denied. (*Id.* at PageID.17).

Plaintiff seeks a declaration that the defendant's policies and procedures violate Title II of the ADA and §504 of the Rehabilitation Act, an award of compensatory damages, and an award of full costs and attorneys' fees arising out of this litigation. (*Id.* at PageID.24).

Defendant filed a *Motion to Dismiss* on October 6, 2025. (ECF No. 15). MDOC argues that Plaintiff's claims should be dismissed for lack of standing and for failure to state a claim. (*Id.* at Page ID.1). The motion to dismiss is fully briefed and ripe for report and recommendation.

## II. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not

contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds pro se complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by pro se parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the [p]laintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); see also, *Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a

pro se plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).”).

“In evaluating a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, [. . .] accepting as true all factual allegations contained in the complaint and determining “whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.” *Choate’s Air Conditioning & Heating Inc., v. Light, Gas, Water Div. of City of Memphis*, 16 F. App’x 323, 327–28 (6th Cir. 2001) (quoting *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir. 1991); citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)). “We are not, however, bound to accept as true unwarranted factual inferences [. . .] or legal conclusions unsupported by well-pleaded facts. *Id.* (citing *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## III. STATUTORY FRAMEWORK

Title II of the Americans with Disabilities Act, 42 U.S.C. §12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794, prohibit disability-based discrimination in the distribution of governmental services. Title II provides that “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The ADA defines a disability as a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C.§ 12131. A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "public entity" includes "any State or local government" and "any department, agency, or other instrumentality of a State." 42 U.S.C. § 12131.

Section 504 of the Rehabilitation Act provides that no otherwise qualified individual with a disability shall, solely by reason of disability, "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Given the statutes' similar requirements, courts generally evaluate ADA and Section 504 claims together. *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024) (citing *Knox Cnty., Tennessee v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023).

Both statutes apply to state correctional facilities. The Supreme Court has held that state prisons are "public entities" under the ADA and must comply with the statute. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Section 504's reach is defined by the defendant's receipt of federal financial

assistance. Because state correctional departments are typically the recipients of such funds, they are conventionally considered to be within the reach of this statute as well. *See Kaufman v. Carter*, 952 F. Supp. 520, 527 (W.D. Mich. 1996).

The Sixth Circuit expanded Title II and Section 504's description of "services, programs, or activities" to encompass "virtually everything that a public entity does." *Keller v. Chippewa Cnty., Michigan Bd. of Commissioners*, 860 F. App'x 381, 386 (6th Cir. 2021). Thus, protections afforded by the ADA and Rehabilitation Act extend to the day-to-day services provided within a correctional facility. *Id.* Accordingly, the denial of meaningful access to services like medical care, bathroom facilities, or dining halls could support a prima facie showing of a violation of such statutes. *See United States v. Georgia*, 546 U.S. 151, 157, (2006); *see also Yeskey*, 524 U.S., at 210 (1998); *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

Although the ADA and Section 504 do not require prisons to provide disabled inmates with greater benefits than those afforded to the general prison population, they do require prisons to ensure that disabled inmates are not denied equal access to available services. *Wilson v. Gregory*, 3 F.4th 844, 859 (6th Cir. 2021). As the Seventh Circuit explained in *Crawford v. Ind. Dep't of Corr.*, disabled prisoners have the same interest in accessing prison services as nondisabled inmates and are entitled to participate in those services without being

treated less favorably because of their disabilities. 115 F.3d 481, 486 (7th Cir. 1997). Thus, a prison violates the ADA or Rehabilitation Act when it fails to afford a disabled inmate meaningful access to that service.

### A. Requirements for a Claim

To prevail under either statute, a plaintiff must establish three things: 1) he is disabled as defined by statute; 2) he is otherwise qualified for participation in the government program; and 3) that he was excluded from participation in, denied the benefits of, or subjected to discrimination under a program because of his disability. *Brown v. Michigan Dep't of Corr.*, No. 25-1576, 2026 WL 1333575, at *3 (6th Cir. May 8, 2026). Section 504 claims additionally require plaintiffs to show that the discrimination was "solely" because of their disability. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317 (6th Cir. 2012). This standard does not apply to claims under Title II. *Id.* at 317.

#### i. Establishing a Cognizable Claim

Plaintiffs claiming discrimination in violation of Section 504 and the ADA, typically satisfy the first two elements without issue. While plaintiffs may be held to their burden of proof that they are disabled and that they were otherwise entitled to the benefits and services they allege to have been denied, these elements are often not hotly contested. The third element is generally a little less clear. A plaintiff may satisfy the third element of a Title II or Section 504 element in one of

two ways; either through a theory of intentional discrimination or by showing the entity failed to reasonably accommodate. *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024).

ii. Failure to Accommodate

The regulations implementing the ADA require a public entity to make reasonable modifications to its "policies, practices, or procedures" when necessary to ensure equal access to public benefits. 28 C.F.R § 35.130(b)(7). This imposes affirmative obligations on public entities to ensure equal access to their services and goes beyond merely refraining from intentionally discriminating against the disabled. *Id*. To succeed on an ADA reasonable accommodation claim, a plaintiff must show that the defendant could have reasonably accommodated his disability but refused to do so, "and that this failure to accommodate impeded his ability to participate in, or benefit from, the subject program." *Finley*, 102 F.4th at 820; *Brown*, 2026 WL 1333575, at *3. Since failing to grant a reasonable accommodation is itself evidence of discrimination, a plaintiff needs only show that the public entity failed to make a modification necessary to provide meaningful access to its services or programs. *Keller*, 860 F. App'x at 385. Even so, the determination of what constitutes "[a] reasonable modification is highly fact-specific, requiring case-by-case inquiry." *Roell v. Hamilton Cnty.,*

*Ohio/Hamilton Cnty. Bd. of Cnty. Commissioners*, 870 F.3d 471, 489 (6th Cir. 2017) (citing *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015).

Section 504 requires a very similar showing. To prevail on a failure to accommodate claim under Section 504, a plaintiff must show (1) he is disabled; (2) he is otherwise qualified; (3) the federal fund recipient knew or had reason to know about his disability; (4) he requested a reasonable accommodation; and (5) the federal fund recipient refused to provide one. 29 U.S.C. § 504; *see Smith v. Michigan Dep't of Corr.*, 159 F.4th 1067, 1073 (6th Cir. 2025).

iii. Intentional Discrimination

A cognizable intentional-discrimination claim lies when the plaintiff alleges facts showing that "the defendant treated [him] less favorably on account of his disability." *Brown*, 2026 WL 1333575, at *3. In order to prove an intentional discrimination claim, a plaintiff "must present evidence that animus against the protected group was a significant factor in the position taken by the ... decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). An intentional discrimination claim brought under the ADA requires the claimant's disability to have been the 'but-for' cause of the discrimination, whereas an Section 504 claim requires a plaintiff to show that his disability was the sole cause of the defendant's discriminatory behavior. *Finley*, 102 F.4th at 823.

iv. Remedies under the ADA and Section 504

Congress limited the remedies available under Title II of the ADA to those remedies available under the Rehabilitation Act. 42 U.S.C. 12133. Neither statute allows for an award of punitive damages. *Barnes v. Gorman*, 536 U.S. 181, 188 (2002). As the Rehabilitation Act was passed under Congress' spending clause authority, the Supreme Court further limited the remedies available under the act to those remedies which would arise under a theory of contract. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022). On this reasoning, the Supreme Court held that damages for mental anguish and emotional distress were unavailable. *Id.* While neither the Supreme Court nor the Sixth Circuit have directly addressed whether *Cummings* also precludes emotional distress or mental anguish damages under Title II of the ADA (which is not a piece of spending clause legislation), courts have concluded that given the Rehabilitation Act's constraint on the remedies available under Title II of the ADA, such relief is barred.

> Title II of the ADA provides that "[t]he remedies, procedures, and rights set forth in [§ 505 of the Rehabilitation Act] shall be the remedies, procedures, and rights" that apply to Title II claims. 42 U.S.C. § 12133. Because the remedies provided by Title II to ADA claimants are coextensive to those available under the Rehabilitation Act and emotional distress damages are *not* available under the Rehabilitation Act, it necessarily follows that emotional distress damages would not be available in Title II cases, either.

*Smith v. Kalamazoo Pub. Schs.*, 703 F. Supp. 3d 822, 829 (W.D. Mich. 2023) (citation modified). Thus, the remedies available under both statutes are limited to those damages available under a theory of contract.

## IV. ANALYSIS

The Court must first examine Defendant's argument that Plaintiff lacks standing to bring this action. To establish standing Plaintiff must allege he suffered an injury in fact, that is traceable to Defendant, and that can be redressed by a favorable decision of the Court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Defendant argues that Plaintiff has established none of these elements. The undersigned is persuaded that Plaintiff has standing to pursue at least one of his claims.

Defendant first argues that Plaintiff cannot establish that he has suffered an injury in fact because he does not have a legally protected interest in getting to the cafeteria before other disabled prisoners and that no such injury can be traced to Defendant. (ECF No. 15, PageID.83). Here, Defendant distorts the nature of Plaintiff's claim. Plaintiff does not argue he has an interest in arriving at the cafeteria before other prisoners, but rather that he has an interest in being provided the same services, such as meals, as non-disabled prisoners. Plaintiff has sufficiently alleged there were instances when the lack of accessible seating in the prison cafeteria—caused by Defendant's refusal to promptly replace an accessible

table—and the MDOC's policy of not allowing Plaintiff to eat if he was not at a table, caused him to go without food. While Defendant is correct that Plaintiff does not have a legally protected interest in arriving to the cafeteria prior to other disabled individuals, Plaintiff has a legally protected interest not being denied the opportunity to eat as a result of his disability.

Defendant next argues that Plaintiff has not established a causal connection between his injury and Defendant's conduct. (ECF No. 15, PageID.86). Plaintiff's allegations outlining MDOC's refusal to replace a broken table sufficiently connect MDOC's policies and procedures with the injury Plaintiff suffered. Further, Plaintiff's allegations that MDOC's policy which allowed the staff to threaten Plaintiff with discipline if he was not at an accessible table, directly links MDOC and Plaintiff's alleged injury.

Defendant next argues that Plaintiff lacks standing because the Court cannot redress Plaintiff's harms. (ECF No. 15, PageID.87). As discussed above, the remedies available under Title II of the ADA and Section 504 of the Rehabilitation Act are limited to those remedies generally available in an action arising under contract. *Cummings*, 596 U.S. at 230. As Plaintiff is now released from incarceration and no longer in MDOC custody, Plaintiff lacks standing to request declaratory judgment or an order directing Defendant to reasonably accommodate

Plaintiff's disability. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). This leaves only Plaintiff's request for compensatory damages.

Compensatory damages are permitted under the ADA and Section 504, if the discrimination was intentional or the result of deliberate indifference and the harms Plaintiff alleges to have suffered are compensable under a theory of contract. When evaluating compensatory damages suffered under a theory of contract, courts generally look to return the non-breaching party to the position they were in prior to its breach. *Barnes*, 536 U.S. at 189. Here, Plaintiff alleges to have been denied access to meals he was entitled to, that eating in his wheelchair exacerbated his pain, and that not having a table led to his humiliation and embarrassment. (ECF No. 1). As discussed above, Plaintiff's humiliation and embarrassment are not actionable. *Cummings*, 596 U.S. at 230. While the compensatory damages Plaintiff might prove here might be negligible, it would be within the Court's power to award Plaintiff compensation for the exacerbation of his physical injuries and the missed meals that MDOC's intentional discrimination or deliberate indifference may have caused. Thus, the undersigned finds that while Plaintiff lacks standing to pursue his failure to accommodate claims or seek declaratory relief, Plaintiff has standing to proceed on his ADA and Section 504 discrimination claims.

### A. Plaintiff's ADA Title II Discrimination Claim

According to the complaint, Plaintiff is wheelchair-bound and could only use designated accessible tables while eating in the cafeteria. (PageID.9–10). Plaintiff alleges that one of those tables broke around May 2024, eliminating eight accessible seating positions. (*Id.* at PageID.16). He also alleges that prison officials were aware of the problem because he repeatedly grieved the lack of accessible seating and informed staff that the shortage was causing him pain and preventing him from eating meals. (*Id.* at PageID.17). Despite that knowledge, Defendant failed to replace the table even though suitable replacement tables were allegedly readily available elsewhere in other MDOC's facilities. (*Id.* at PageID.16–17). To survive a motion to dismiss, Plaintiff need not prove discriminatory intent; he need only allege sufficient facts to permit a reasonable inference that disability was a but-for cause of the challenged conduct. *Brown*, 2026 WL 1333575, at *3; *Finley*, 102 F.4th at 823.

Although Plaintiff does not allege overt hostility toward disabled inmates, his complaint alleges more than mere negligence. Plaintiff alleges that MDOC officials knew wheelchair-bound inmates depended on a few designated accessible tables to access prison meal services. (*Id.* at PageID.10–11). He further alleges that one of those tables broke around May 2024, eliminating eight accessible seating positions. (*Id.* at PageID.16). According to Plaintiff, prison officials were

repeatedly informed through the grievance process that the broken table was preventing disabled inmates from accessing meals, causing additional pain, and forcing inmates to compete for the remaining accessible seating. (*Id.* at PageID.17). Plaintiff additionally alleges that replacement tables were readily available elsewhere in the facility, but that officials nevertheless chose not to replace the broken table. (*Id.* at PageID.16).

These allegations are significant because Title II imposes affirmative obligations on public entities to provide disabled individuals meaningful access to public services. *Wilson* at 859. Moreover, the failure to provide a reasonable accommodation may itself constitute disability-based discrimination. *Keller*, 860 F. App'x at 385. Thus, accepting Plaintiff's allegations as true, the complaint plausibly alleges that MDOC knowingly allowed a disability-related barrier to persist after receiving repeated notice of both the problem and an alleged solution.

Plaintiff further alleges that the consequences of that decision fell specifically on inmates requiring accessible seating. According to the complaint, when no accessible seating was available, Plaintiff was forced either to balance his tray on his lap while seated in his wheelchair, exacerbating his pain and causing food spills, or leave the chow hall without eating after being threatened with misconduct sanctions. (PageID.14–15, 18–20). Since those harms arose from Plaintiff's inability to use standard seating available to nondisabled inmates, the

complaint plausibly alleges that disability was a but-for cause of the challenged deprivation. *Finley*, 102 F.4th at 823.

Accordingly, while discovery may ultimately reveal that Defendant's conduct amounted to poor administration rather than intentional discrimination, Plaintiff's allegations permit the reasonable inference that MDOC knowingly refused to address a disability-related barrier to meal services despite repeated notice of the problem. At the pleading stage, that is sufficient to state a plausible ADA Title II intentional discrimination or deliberate indifference claim.

**B. Plaintiff's Section 504 Intentional Discrimination Claim**

The Section 504 claim stands differently. Although the same factual allegations may satisfy Title II's but-for causation requirement, they do not plausibly establish that Plaintiff's disability was the sole cause of the challenged conduct as required under Section 504. Plaintiff repeatedly provides alternative explanations for the shortage of accessible seating that has nothing to do with Plaintiff's disability. These allegations suggest multiple contributing causes for Plaintiff's inability to secure accessible seating, including overcrowding, administrative practices, and third-party misconduct. Because Plaintiff's own allegations identify causes other than his disability, the complaint does not plausibly allege that the challenged exclusion occurred just because of his disability, as Section 504 requires. *Lewis*, 681 F.3d at 317; *Finley*, 102 F.4th at

823. Accordingly, dismissal of Plaintiff's Section 504 claim is warranted even though his Title II claim should survive.

## V. RECOMMENDATION

For the reasons set forth above, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant's *Motion to Dismiss* (ECF No. 15) be **GRANTED** in part and that Plaintiff's failure to accommodate and Section 504 intentional discrimination claims be dismissed; and **DENIED** in part allowing Plaintiff to proceed on his ADA Title II intentional discrimination claim.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Tchrs. Loc. 231, Am. Fed'n of Tchrs., AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date: September 4, 2026.

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 4, 2026, by electronic means and/or ordinary mail.